## THE ARTISAN.

## THE HELMSMAN.

District Court, S. D. New York. May 12, 1927.

**1. Collision ⬤═95(1)—Tug with tow anchored in channel in fog, and passing tug with tow, both held in fault for collision between tows (33 USCA §§ 191, 409).**

Tug, with scow in tow alongside, anchored in a fog, in a navigable channel, in violation of Act March 3, 1899, § 15 (33 USCA § 409 [Comp. St. § 9920]), and which failed to sound the fog signals required by Inland Rules, art. 15 (33 USCA § 191 [Comp. St. § 7888]), held in fault for collision between her tow and the tow of a passing tug. The latter tug also *held* partly in fault for moving at such speed that she could not stop within the distance that the anchored vessel could be seen.

**2. Collision ⬤═115—Part owner of tug and of another vessel could sue tug for injury to the other vessel in collision.**

Part owner of tug and of another vessel injured in collision *held* entitled to maintain suit against tug for the collision.

In Admiralty. Suit for collision by Robert Rogers against the steam tug Artisan, the Cahill Towing Line, claimant, and the steam tug Helmsman, Robert Rogers, claimant. Decree for libelant against both tugs.

Park, Mattison & Lynch, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for libelant.

Bigham, Englar & Jones, of New York City (Charles W. Hagen, of New York City, of counsel), for claimant of the Artisan.

WINSLOW, District Judge. On February 5, 1921, the scow R. R. No. 8, in tow alongside the tug Helmsman, was damaged by collision with the scow O 26, which was anchored in the Narrows alongside and made fast to the steam tug Artisan.

In the early morning of February 5, 1921, tide flood, weather foggy, the Artisan, with the scow O 26 in tow alongside, anchored the O 26 at some point in the Narrows between Ft. Hamilton and Ft. Wadsworth. The witnesses from the Artisan agreed that the place of anchorage was about one-quarter of a mile off the Brooklyn shore. An examination of the chart, checked with the testimony, would indicate that the point of anchorage was probably less than 250 feet from mid-channel. In this connection, it is significant that the steamship Algonquin passed, wherever the anchorage may have been, between the O 26 and the Brooklyn shore. The Artisan was somewhere directly in the channel, and not far from mid-channel.

[1] A few minutes before 7 a. m., the tug Helmsman, while proceeding up the Narrows with the R. R. No. 8 in tow alongside, running under a slow bell, and blowing regulation fog signals, heard a shrill whistle, which sounded like a motorboat whistle, blowing one long and two short blasts. When this whistle was heard, the Helmsman stopped her engines, again heard the shrill whistle, and almost immediately the Artisan and her scow loomed up, and the engines of the Helmsman were reversed. The R. R. No. 8, however, struck the iron plates on the stern of the an-

chored ·O· 26, causing damage to the R. R. No. 8. This shrill whistle was from the O 26.

Act March 3, 1899, c. 425, § 15 (U. S. Comp. Stat. § 9920 [33 USCA § 409]), provides: "It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft."

It is, of course, quite true that a violation of this provision might be permissible in the face of an emergency. Such an emergency, it is conceivable, might arise in a dense fog settling down on the moving vessel. There is not sufficient evidence in the record that such an emergency presented itself in the present instance, although the fog was admittedly dense, In any event, a vessel so anchoring in a channel is, in fact, an obstruction, which imposes a special burden upon moving vessels in the channel. Such anchoring vessel in a fog is bound to make her presence known by the ringing of a bell rapidly for five seconds, at intervals of not more than a minute (U. S. Comp. Stat. § 7888 [33 USCA § 191]).

The facts in this case, I think, are conclusive that, while a fog bell was rung on the Artisan, it was not at intervals of a minute or less, and it was in alternation with a fog bell on the Algonquin, anchored in the vicinity. The evasive replies of the witness for the Artisan are convincing that the bell was rung in alternation with that on the Algonquin, but that the Artisan's bell was not rung as required by law. This witness attempted, under redirect examination, to overcome the effect of his previous testimony of alternate ringing; but it was quite apparent that his attempt to correct was based upon his conclusion that he had blurted out a fact to the damage of his boat, rather than a zeal to tell the truth.

"A vessel infringing a positive regulation must affirmatively show that such violation did not contribute." The Walter Franks (C. C. A.) 299 F. 319. The fact that the Artisan and the O 26 were anchored in the channel imposed a burden of responsibility more exacting than if at an anchorage ground, assuming that anchoring at that point was excusable.

A further contributing cause of the collision was the blowing of the shrill, squeaky whistle on the scow O 26. The scow O 26 had no fog bell. The natural deduction from the blowing of the shrill, squeaky whistle on the scow was that it was blown by some small boat under way.

The next question requiring consideration is whether or not the Helmsman was also at fault. I am of the opinion that, under the doctrine set forth in The Cohocton, Walter Franks Case (C. C. A.) 299 F. 319 (modifying the decree of the District Court), the Helmsman is also partly at fault. It is evident that she was moving at a speed which made it impossible for her to stop and avoid collision within the distance that the other vessel could be seen.

[2] I am of opinion that the libelant is entitled to maintain this action. On the day of the collision, February 5, 1921, the scow R. R. No. 8 was owned, in equal shares, by Robert Rogers and Augustus T. Mackenzie. On that same date the Helmsman was owned, in equal shares, by Robert Rogers and Fred E. Jones, trading under the name of Fred E. Jones Dredging Company. As of February 8, 1922, Jones and Rogers transferred the whole of the tug Helmsman to Robert Rogers. It is manifest that, if Rogers was the sole owner of R. R. No. 8 and the Helmsman at the time of the accident, he would have no recovery against the Helmsman, if that tug be found partly liable for the collision. "The same person cannot be both plaintiff and defendant at the same time in the same action." Globe & Rutgers Fire Ins. Co. v. Hines (C. C. A.) 273 F. 774, at page 777.

The issue to be determined by the court is the relative responsibility of the Artisan and the Helmsman for the damage sustained by the R. R. No. 8. The amount of recovery or accounting between the part owners is merely incidental to the main issue.

A decree for libelant against both the Artisan and the Helmsman will issue in accordance with the views expressed. Settle decree on notice.